DEDIEU *v.* THE PEOPLE.

Under an indictment charging only arson in the first degree, the prisoner cannot be convicted of the third degree of arson, in willfully burning goods with intent to prejudice an insurer of them.

The statute (2 R. S., 702, § 27), allowing a conviction of an offence in any degree inferior to that charged in the indictment, applies only where the higher grade includes the lesser with additional circumstances, or some special intent, and where, after rejecting the unproved allegations, enough remains in the indictment to describe with reasonable certainty an inferior degree of the offence, according to the statutory definition.

WRIT of error to the Supreme Court. The prisoner was indicted in the Court of General Sessions of the city of New York for the crime of arson in the first degree. The indictment charged him with having, on the 21st March, 1858, in the night time, set fire to a certain dwelling house of one Amelia Asselin, situate in New York, "there being, then and there, within the said dwelling house some human beings," contrary to the statute, &c. After not guilty pleaded, the trial took place in the Sessions before the city judge. It appeared that the prisoner occupied an apartment in a building situated in Leonard street, No. 86, where he worked at making boots and shoes: Mrs. Asselin, named in the indictment, and other persons, occupying separately other apartments in the building. On the evening of the day mentioned, a fire was discovered in the room occupied by the prisoner, he being then absent from the house. It was soon extinguished; and, on examination, it was found that no part of the building was burned, but that the smoke and flame which had been seen proceeded from a large packing box and two trunks belonging to the prisoner, and standing on the floor of the room, and from his cot bed also in the room. The box and trunks were filled with boots and shoes; and the evidence tended to the conclusion that the prisoner, or some one else, had poured camphene into the box, trunks and bed, and had then set fire to them inside, with the

Dedieu *v.* The People.

design of consuming the personal property contained in them, and had then left the room; and that the fire had been discovered and extinguished before it had communicated to any portion of the wood work of the building. The district attorney stated that he abandoned the charge of arson in the first degree, and claimed to convict the prisoner of that offence in the third degree, under the 5th section of the article of the Revised Statutes respecting arson, which attaches that degree of criminality to willfully burning any goods, &c., which should be, at the time, insured against loss or damage by fire, with intent to prejudice the insurer. In the evidence given to connect the prisoner with the burning, it had been shown that he was, at the time, insured by the Pacific Insurance Company in $600 on boots and shoes, and $200 on beds, bedding, clothing and linen contained in the building No. 86 Leonard street. The prisoner's counsel insisted that he could not be convicted under that branch of the statute, upon the present indictment; but the court held otherwise, and charged the jury that, if the evidence warranted it, they could find the prisoner guilty of arson in the third degree, in burning his property with intent to defraud an insurance company; though the indictment was for the first degree of that offence, and there was no count applicable to the special facts required to establish the offence for which a conviction was claimed. The prisoner's counsel excepted. There was a verdict of guilty. The prisoner was sentenced to the State prison, the judge declining to stay the sentence. The conviction was affirmed by the Supreme Court sitting in the first district: upon which the present writ of error was brought.

*A. Oakey Hall,* for the plaintiff, in error.

*John Sedgwick,* for The People.

DENIO, J. I am of opinion that this judgment cannot be sustained. The prisoner has been convicted and sentenced for an offence of which the grand jury never indicted him.

In this State, all offences punishable by imprisonment in the State prison are defined by statute. Each separate crime con sists in the commission or omission of certain acts under certain circumstances, and, in some cases, with a particular intent. An indictment for any of these offences must charge the defendant, with certainty and precision, with having committed or omitted the acts, under the circumstances and with the intent mentioned in the statute. If any of the ingredients contained in the statute definition are omitted, the indictment is fatally defective, and the defect is not cured by verdict. (2 Hale's P. C., 168, 192, 193; Archbold's Crim. Pleadings, 46; *The People* v. *Allen*, 5 Denio, 76.) To bring a party within the statutes under which this conviction took place, there must have been property, real or personal, which was, at the time, insured against loss or damage by fire; the property so insured must have been willfully burned by the accused, and such burning must have been done with the intent to prejudice the insurer. (2 R. S., 667, § 5.) No facts of this kind are mentioned in the present indictment. There is no allusion to any insurance, or to any intention to injure or prejudice any person holding such a relation to the property. Though the indictment may have been a good one for another offence, it certainly was not an indictment under the 5th section of the statute under which the conviction was had. It lacked every averment required in such an indictment.

There is another rule of criminal law which was overlooked on the trial under review. The act which is charged as an offence must be described with such a degree of certainty as to identify and distinguish it from other transactions, so that the party may not be indicted for one thing and tried for another. The rule has been well stated by Judge BRONSON, in *The People* v. *Taylor* (3 Denio, 91). "Certainty," he said, "is also required to the end that the defendant may know what crime he is called upon to answer: that the jury may be able to deliver an intelligible verdict; and finally, that the defendant may be able to plead his conviction or acquittal in bar of another prosecution for the same offence." Then, descriptive aver-

ments must be proved as averred, for it would be idle to require a certain description of the act complained of to be repeated in the indictment, if the prosecutor were at liberty to prove that particular act or any other criminal act at his pleasure.  The rule, therefore, is that the evidence must correspond with the indictment as to all matters of description; and this is so though the pleader has been more particular in his description than he need have been. (Rosc. Crim. Ev., 102; 1 Stark. on Ev., 373.)  Now the act imputed to the defendant was setting fire to the dwelling house of Amelia Asselin, situated in the ninth ward of the city of New York.  The house was properly enough laid as the dwelling of that person; the statute allowing the name of a lodger in the same building to be stated as the owner. (2 R. S., 657, § 9.)  But it turned out in the evidence that he had not set fire to the house at all.  What he did, no doubt, endangered the building and was most reprehensible in itself, but it was not the setting fire to the house.  He set fire to and attempted to burn up some personal property belonging to himself, an act which was not of itself criminal.  But that property was insured and his design in burning it was, probably, to defraud the insurers.  No one can fail to see that the subject of the offence and the illegal act itself was wholly misdescribed, and that there was a very wide variance between the allegation and the proof.  The prisoner's counsel claimed an acquittal on that ground, but the jury were instructed that they might convict upon the case made by the evidence, variant as it was from the charge in the indictment.

It would no doubt be admitted by the counsel for the prosecution that these objections would be fatal to this conviction by the rules of the common law; but it is claimed that the ruling upon the trial was warranted by the following provisions of the Revised Statutes: " Upon an indictment for any offence consisting of different degrees, as prescribed in this chapter, the jury may find the accused not guilty of the offence in the degree charged in the indictment, and may find such accused person guilty of any degree of such offence inferior to that charged in the indictment, or of an attempt to

commit such offence." (2 R. S., 702, § 27.) As understood by the counsel for the prosecution, this enactment would greatly modify and in many cases would supersede the rules which have been mentioned. According to the argument it would not be material how widely the circumstances of the offence proved, might differ from those charged in the indictment, if the latter disclosed a higher degree of an offence arranged in the statutes under the same general name. For instance, many criminal acts, very different in their character and circumstances, are arranged under the name of arson. Thus, burning growing grain, marsh grass, fruit trees, woods and fences, are specifications of arson in the fourth degree. Upon the construction contended for, any of these acts might be proved, and a conviction therefor might take place under the present indictment, in which the defendant is charged with a very different thing, namely, setting fire to an inhabited dwelling house. And cases still more preposterous might occur in respect to other crimes. In manslaughter, the most usual example is the killing of another in the heat of passion, but in a cruel and unusual manner. This is the offence in the second degree. But it is manslaughter in the fourth degree if one keep a mischievous animal, with a knowledge of its propensities, and it kill some person. So in forgery. Forging a will, or a public security for money, are instances of the offence in the first degree; and engraving a plate for bank notes without the authority of the bank, is an example of the offence in the second degree. It certainly is not possible that under an indictment for the higher degree in these cases, the circumstances being stated with the particularity required by the rules of criminal pleading, facts so strikingly different as those required to constitute the offence in the lower degree could be proved, and be the foundation of a conviction; and yet, if the section is to be understood in the sense contended for, such would be the consequence. But the provision is not that in all cases the jury may find the prisoner guilty of the inferior degree, under an indictment for the higher degree of the same offence; but the meaning is, that there is no legal objection to such a

result arising out of the circumstance that the crime is divided into several degrees.    This division into degrees was a change of the common law, or in some cases an innovation upon former statutes.    Neither manslaughter, forgery nor burglary formerly admitted of degrees; but in framing the Revised Statutes, it was seen that many criminal acts, very different in their moral aspects and in their effects upon society, fell under the same name, and were punishable in the same manner.    Hence an effort was made towards a more discriminating arrangement; and the definition of different degrees of several of the leading offences was the result.    These different degrees became in legal effect so many different offences.    The idea of distinguishing them numerically as different degrees of a generic offence was simply a matter of terminology.    Their legal character and relations would have been precisely the same if an additional set of names had been invented and attached to the different descriptions of crime.

The section of the statute above quoted, and upon which this case depends, appears to me to have been enacted to guard against some anticipated consequences of this change in the ancient definition of crimes.    As these different degrees were in substance distinct crimes, it was apprehended that one indicted of one degree of the crime could not, upon that indictment, be convicted of any other, though it should be an inferior degree of the same crime.    If this were so held, it would create an inconvenience which did not before exist; for it was a well established principle that where an offence was increased in grade, or as to the measure of punishment, by the existence of a particular circumstance, or a special intent on the part of the accused, and an indictment was found setting forth the circumstance or intent which rendered the act more highly criminal, if the prosecutor failed to prove that part of the case, he was still entitled to a conviction for the simple offence; and the unproved allegations were not allowed to prejudice the case proved.    They were regarded as surplusage.    It was upon this principle that one indicted of petit treason could be convicted of murder, if the special relation required in the

higher offence were not proved; or if indicted for murder he might be convicted of manslaughter; or if of burglary in breaking and entering a dwelling house and stealing therein, he could be convicted of simple larceny; and in all cases of larceny or of assault where, by statute, circumstances of aggravation would subject the offender to a higher punishment, the prosecution would not fail, if unable to prove the aggravating circumstance, but the offender would be convicted of so much of the charge as the evidence proved him guilty of. (Rosc. Crim. Ev., 99, 100; 1 Stark. Ev., 373; Am. Crim. Law, by Wharton, 229; *Commonwealth* v. *Griffin*, 21 Pick., 523; *The People* v. *Jackson*, 3 Hill, 92; *Reg.* v. *Nichols*, 9 Carr. & P., 267; *The People* v. *White*, 22 Wend., 167.) In all these cases the indictment includes a true description of the act done, and all the circumstances defining the minor offence, and it adds to these the further circumstance, which, if proved, would raise the offence to the higher grade. Now, if the latter are not proved, there is yet no variance. As far as the proof goes, it conforms to the allegations. Simply, the whole indictment is not proved; but the principle applies, that it is enough to prove so much of the indictment as shows that the defendant has committed a substantial crime therein specified. (*Hollingberry's Case*, 4 Barn. & Cress., 329; Rosc., 99; *The People* v. *Jackson*, *supra*.) It is generally laid down in the English books that this doctrine does not apply where the lesser offence is a misdemeanor, and the indictment is for a felony, being offences of different classes. (*Walbeer's Case*, 1 Leach, 14; 2 Strange, 1133; *S. C.*, Rosc., *supra*.) But this distinction is said not to prevail in this State. (*The People* v. *White*, and *The People* v. *Jackson*, *supra*.) When the Revised Statutes were enacted these last mentioned cases had not been decided, and it is probable that the rule was understood by the legislature to be as laid down by the English authorities. If this were so, then as several of the lower degrees of the offences defined by the Revised Statutes were simple misdemeanors at common law, it may have been thought necessary to insert the provision in question, in order to prevent a conviction for an inferior

degree where the indictment was for a higher one. It may very well be, too, that the legislature were induced, from abundant caution, to affirm this principle of the common law by incorporating it into the statutes, as has been done in many other cases. But whatever may have been the motive, I am of the opinion that the principle of the section in question is identical with the rule of the criminal law, which I have endeavored to explain. If correctly read, it would mean that upon an indictment for an offence consisting of different degrees, the jury may, in a case in other respects proper, find the accused not guilty in the degree charged, but guilty in any inferior degree of the same offence. Such finding would be proper where the act proved was the identical act set forth in the indictment, and where all the circumstances descriptive of the inferior degree, of which the defendant was to be convicted, were also parcels of the offence in the higher degree, and were contained in the indictment; and such finding would not be proper in any other case. Such a construction of the statute as was applied in this case, would abrogate the established rules of pleading in criminal prosecutions, and would, in a variety of cases, deprive an indictment of all significancy, by dispensing with any correspondence between its averments and the offence of which it was sought to convict the defendant.

I do not think that the position of the prosecution is sustained by a verbal construction of the section in question. The word offence, as first used in this clause, and as afterward repeated the first time, means the criminal act of the accused, and not the crime as defined by law; as if it had read, "upon an indictment for a criminal act consisting of different degrees of crime, according to the circumstances under which it was committed, according to the definition in this chapter, &c., the jury may convict of the offence in a degree inferior to the one which is charged in the indictment." It is by assigning a different meaning to the word offence, that any doubt has arisen upon the section.

The statute, according to the construction which I place upon it, would yet have an extensive application. The differ-

ent degrees of arson furnish a number of examples. Under an indictment for the first degree of that offence, if it should appear that the burning was in the daytime, the remainder of the indictment, supposing it to be proved, would show the defendant guilty of arson in the second degree. So if it should turn out that there was no person living in the house at the time; and so also, I think, if the evidence should show that the alleged dwelling house was not a building of that character but only an out-house within the curtilage of a dwelling house. By going through the several offences which admit of degrees, it would be easy to point out many cases where it would be entirely consistent with sound principles to convict of an inferior degree upon an indictment for a higher one; as it would likewise be to point out instances in which such a proceeding would be utterly preposterous. The rule which I understand to apply, is one of easy application. It is, that where, by rejecting the unproved allegations, there would yet remain enough in the indictment to describe an inferior degree of the offence, a conviction for such lower degree may properly be had.

The judgment of the Supreme Court, and of the General Sessions of the Peace of New York, must be reversed.

WRIGHT, J. I think the conviction erroneous, unless a party may be charged simply with maliciously setting fire to the freehold of one person, and, without allegation or averment of any kind, convicted of burning his insured goods with intent to prejudice or defraud another person, the insurer. The statute provides that when, by law, an offence comprises different degrees, an indictment may contain counts for the different degrees of the same offence, or for any of such degrees (2 R. S., 728, § 51); and there is also the provision that "upon an indictment for any offence consisting of different degrees, as prescribed in this chapter, the jury may find the accused not guilty of the offence in the degree charged in the indictment, and may find such accused person guilty of any degree of such offence inferior to that charged in the

Dedieu *v.* The People.

indictment, or of an attempt to commit such offence." (2 R. S. 702, § 27.) This provision, it is supposed, supports the charge of the judge, and permits a conviction on an indictment simply for firing the dwelling house of another, of an offence unknown to the common law, and the essence of which is the intent to defraud an insurance company. The statute should receive a reasonable construction. Its real meaning is, that upon an indictment charging an offence of which the statute has prescribed different degrees, the inferior degrees being generic to the superior, and the indictment containing enough to apprise the accused of the lesser charge, if the evidence, in the view of the jury, be insufficient to convict of the greater offence charged, but sufficient to convict of an inferior degree of such offence, the jury may find the accused guilty of the inferior degree, or of an attempt to commit the offence charged. As, for example, if a person should be charged with setting fire to an inhabited dwelling house in the nighttime, which would be arson in the first degree, and the proof should be that the firing was in the daytime, the jury would be justified in convicting the accused of the second degree of the offence charged. The offence is the voluntary and malicious firing of the house of another, which, whether committed by day or night, was a felony, at common law. The statute attaches a lesser degree of criminality where the firing is in the daytime; but the indictment essentially charges the offence in either the first or the second degree. If the indictment in the present case had counted on the statute crime of arson in the third degree, but had omitted to allege either that the goods burned were insured, or that the burning was with the intent to defraud the insurer, either objection would have been fatal on demurrer; and there could have been no conviction under such an indictment for arson in the third degree. How, therefore, can it be even plausibly urged that, upon an indictment not charging or averring the essential elements that go to constitute the statutory crime, but where there is an utter omission to apprise the party of the charge against him, and, in fact, he is misled by a charge of a different nature altogether, he may be pro-

perly convicted. Certainly, the prisoner could not, in this case, unless courts are prepared to give such a construction to the statute, as that a party may be indicted simply for will-fully setting fire to the dwelling house of A B, and if the proof should disclose the fact, not that he set fire to such dwelling house, but that he burned his own goods with the intent to defraud C D, the jury are authorized to convict of the latter offence, because it happens to be embraced in one of the inferior statutory degrees of arson.

I am clearly of the opinion that the judgment of the Court of Sessions should be reversed, and the defendant discharged.

All the judges concurring,

Judgment reversed, and prisoner discharged.