(83 N. W. Rep. 212.)

---

STATE OF NORTH DAKOTA *vs.* E. H. BELYEA.

Opinion filed June 2, 1900.

**Murder—Information—Duplicity.**

The information charged, or attempted to charge, the defendants with the crime of murder in the second degree committed by the

defendants while they were engaged in the commission of the felony defined by section 7177, Rev. Codes, relating to the crime of producing or attempting to procure the miscarriage of a woman pregnant with child. The facts constituting the offense defined in section 7177 were set out in the information. *Held,* that the information did not charge two distinct and independent offenses, and hence the demurrer thereto upon the ground of duplicity was properly overruled.

### Facts Constituting Lesser Offense Included in Charge of Murder.

*Held,* further, that all averments in the information relating to the subordinate felony were properly and necessarily inserted in the information as descriptive of the major offense, that of murder in the second degree.

### Murder in Second Degree—Subordinate Felony.

*Held,* further, that the subordinate felony defined by section 7177, Rev. Codes, is foreign to, and is not generically connected with, the offense of murder in the second degree, and hence said subordinate offense is not necessarily included in the commission of the crime of murder in the second degree, as defined by subdivision 3, § 7058, Id.

### Verdict Illegal.

The jury returned the following verdict in response to certain instructions given to them by the trial court, and pursuant to a form of verdict furnished the jury by said court: "We, the jury, find the defendant E. H. Belyea guilty of the crime of unlawfully procuring an abortion, as charged in the information." *Held,* that such verdict is illegal, and wholly unauthorized, in a case where the information charges the crime of murder in the second degree perpetrated while defendant is engaged in the commission of an independent felony. *Held,* further, that the verdict erroneously assumed that the offense referred to in the verdict is necessarily committed in the commission of the offense of murder in the second degree.

### Information Criticised.

The information criticised with respect to certain phraseology improperly employed in charging the crime of murder in the second degree.

Appeal from District Court, Ramsey County; *Morgan,* J.
E. H. Belyea was convicted of crime, and appeals.
Reversed.

*Joseph Denoyer, M. H. Brennan,* and *Cochrane & Corliss,* for appellant.

As against defendant's demurrer, the information was sustained under subd. 3, § 7058, Rev. Codes. The information does not, in terms, cover the class of crime this section was intended to reach; and the language of the information is not broad enough to cover this section. The information does not aver that the acts were perpetrated without design to effect death and while defendant was engaged in the commission of a felony. *State* v. *Emerich,* 5 Laws. Cl. Df. 1116, 87 Mo. 110. As a rule of criminal pleading, an indictment bottomed on a statute must contain all those forms of expression, those descriptive words which bring the defendant precisely

within the definition of the statute. *State* v. *Emerich,* 5 Laws. Cl. Df. 1116; *State* v. *Helm,* 6 Mo. 264; 9 Am. & Eng. Enc. L. 626, note 1; *Nichols* v. *State,* 46 Miss. 284; Kerr on Hom., § § 247 and 248. The legislature having declared when the death of a pregnant woman is accomplished by an attempt to produce a miscarriage upon her, under certain circumstances, that it is manslaughter only, no form of allegation varying the facts can make the act murder. By § 7086, the intent to destroy a "quick child" is the feature which makes the offense of abortion manslaughter in case death results to either the child or mother. It is strange if a person, when he only intends a miscarriage on a pregnant woman, which involves no attempt to take life, the foetus not being alive (§ 7177), can, in case death ensues, be held for murder; while, if he intends to destroy a live child the offense is manslaughter only. In other words, if there is no intent to kill, but death ensue, the defendant may be punished by imprisonment for not less than ten years, and from that to thirty years (§ 7069); but if he intends to kill and succeeds he can only get from five to fifteen years (§ 7070). *Lohman* v. *People,* 1 N. Y. 379, 49 Am. Dec. 341; Kerr on Hom. § 161; *State* v. *Emerich,* 5 Laws. Cl. Df. 1117; *Com.* v. *Railing,* 113 Pa. St. 37, 6 Am. Cl. Rep. 7, 1 Atl. Rep. 314, 4 Atl. Rep. 459; *State* v. *Cooper,* 22 N. J. L. 52, 3 Laws. Cl. Df. 343; *Evans* v. *People,* 49 N. Y. 86; *People* v. *Olmstead,* 30 Mich. 431; *State* v. *Smith,* 54 Am. Dec. 607, 5 Laws. Cl. Df. 981, 33 Me. 48. It was not an offense at common law to produce an abortion upon a pregnant woman, with her consent, if she was not quick with child. *Mitchell* v. *Com.,* 39 Am. Rep. 227; *Com.* v. *Bangs,* 9 Mass. 387; *Com.* v. *Parker,* 9 Metc. 263; *State* v. *Cooper,* 51 Am. Dec. 249; *People* v. *Sessions,* 26 N. W. Rep. 291; *Smith* v. *State,* 54 Am. Dec. 607; Taylor, Med. Jur. 526. The legislature created two classes of offenses. The attempt to produce a miscarriage upon a pregnant woman, intending miscarriage only, and an attempt to produce a miscarriage upon a woman pregnant with a quick child, with intent to destroy the child, where death results. The offense originates in the statute defining it. *People* v. *Olmstead,* 30 Mich. 431. The information is insufficient under § 7177, Rev. Codes, because it charges that the use of an instrument was not necessary to save life and does not aver that the miscarriage was unnecessary. *State* v. *Stevenson,* 68 Vt. 527, 35 Atl. Rep. 470; *Bassett* v. *State,* 41 Ind. 313; *Willie* v. *State,* 46 Ind. 363; *State* v. *Lee,* 37 Atl. Rep. 79. The offense is named in the caption of the information as murder. The facts charged in the body of the information do not indicate to defendant that he is accused of an attempt to procure a miscarriage. A proper designation of the crime is essential to a valid information. § 8040, Rev. Codes; Subd. 2, § 8039, Rev. Codes; § 8047, Rev. Codes; *Johnson* v. *State,* 26 Ark. 329; *Brooks* v. *Com.,* 32 S. W. Rep. 403; *People* v. *Dumar,* 106 N. Y. 509. This variance between the crime charged and the facts charged is fatal

to the information. *People* v. *Maxon*, 57, Hun. 367, 10 N. Y. Supp. 593; *People* v. *Dumar*, 106 N. Y. 510, 13 N. E. Rep. 325; *Brooks* v. *Com.*, 98 Ky. 143, 32 S. W. Rep. 403. The jury were instructed that this information charged both the crime of murder in the second degree, and also the crime of abortion. This ruling of the trial court became the law of the case. *Roehr* v. *Ry. Co.*, 7 N. D. 97, 72 N. W. Rep. 1084. And the information is bad for duplicity. § 8042, Rev. Codes; *Territory* v. *Dooley*, 4 Mont. 295, 1 Pac. Rep. 747; *State* v. *Marcks*, 3 N. D. 532; *State* v. *Smith*, 2 N. D. 515. The information cannot be sustained under Subd. 3, § 7058, Rev. Codes, because it contains no averment that the act was perpetrated without design to effect death. *State* v. *Emerich*, 5 Laws: Cl. Df. 1113. And also because it does not aver that the act was done while defendant was engaged in the commission of a felony, and a felony other than the one with which he is charged. *Foster* v. *People*, 50 N. Y. 603; *State* v. *Shock*, 3 Am. Cl. Rep. 186, 192, 68 Mo. 555; *People* v. *Butler*, 5 Park. 377; *People* v. *Rector*, 19 Wend. 605; *People* v. *Skeehan*, 49 Barb. 217. The verdict is a nullity because not responsive to the indictment. Abortion is not named as a crime in the statute. *Flourien* v. *State*, 8 Ohio Dec. 171; Am. Dig. 1898, Title Abortion, § 6. Punishment can only be imposed when the information is based upon the statute under which the sentence is imposed. *Boody* v. *People*, 43 Mich. 34, 4 N. W. Rep. 573; *People* v. *Jones*, 14 N. W. Rep. 543, 49 Mich. 591. Unlawfully procuring an abortion was not the crime named in the information. *Brooks* v. *Com.*, 32 S. W. Rep. 403. The statute contemplates two kinds of verdict, general and special. Under a plea of not guilty a conviction of the offense charged in the information is had by the simple verdict "guilty." § 8235, Rev. Codes. When the crime is distinguished into degrees, on conviction, the jury must find the degree. § 8242, Rev. Codes. Unlawfully procuring an abortion is not a degree of homicide. *State* v. *Marcks*, 3 N. D. 537; *State* v. *Johnson*, 3 N. D. 150. The statute authorizing a conviction of any offense included in that with which defendant is accused, relates only to that class of offense of which there are different degrees, and has no application to a case where the crime charged has no degrees. *State* v. *Johnson*, 3 S. W. Rep. 868; *State* v. *Burke*, 2 S. W. Rep. 10; *People* v. *Keiffer*, 18 Cal. 637; *State* v. *White*, 45 Ia. 325; *Turner* v. *Muskegon*, 50 N. W. Rep. 310; *Territory* v. *Dooley*, 1 Pac. Rep. 747. Where offenses are defined as distinct crimes in the statute under indictment for one, a conviction of the other cannot be had. *State* v. *Pierce*, 4 Blackf. 318; *State* v. *Shear*, 8 N. W. Rep. 287; 1 Whart. Cl. L. 564; *Kinkelly* v. *State*, 43 Wis. 604; *State* v. *Hooks*, 33 N. W. Rep. 57; *State* v. *Yanta*, 38 N. W. Rep. 333; 1 Bish. Cl. L. § 704. The verdict is not sufficient as a special verdict. § 8236, Rev. Codes; *Miller* v. *People*, 25 Hun. 473; *People* v. *Wells*, 8 Mich. 103; *Com.* v. *Chatham*, 88 Am. Dec. 539; *State* v. *Spray*, 18 S. E. Rep. 700;

*State* v. *Ewing*, 13 S. E. Rep. 10. The repeated assertion of matters by the attorney general in his closing argument, of which there was no proof in the case, were prejudicial. *People* v. *Fielding*, 158 N. Y. 542, 46 L. R. A. 661, note; *People* v. *Aikin*, 33 N. W. Rep. 821; *Exon* v. *State*, 26 S. W. Rep. 1088; *Clarke* v. *State*, 5 S. W. Rep. 115. The testimony of Sampson as to his conversation with defendant's brother, in October, that a prescription was given to produce an abortion, and the instruction of defendant's brother as to the girl's treatment not having been made in the presence or hearing of defendant, was highly prejudicial. *Com.* v. *Felch*, 132 Mass. 32; *Owens* v. *State*, 74 Ala. 401; *State* v. *Weaver*, 57 Ia. 730; *Binns* v. *State*, 57 Ind. 46; *Cox* v. *State*, 8 Tex. App. 354; *State* v. *Moberly*, 26 S. W. Rep. 356; *People* v. *Erwin*, 20 Pac. Rep. 59; *Williams* v. *Dickinson*, 9 South. Rep. 851; *McGraw* v. *Com.*, 20 S. W. Rep. 279; *Train* v. *Taylor*, 4 N. Y. Supp. 493.

*P. J. McClory*, State's Attorney, and *John F. Cowan*, Attorney General, for the State.

The information sufficiently charges murder in the second degree within the meaning of Subd. 3, § 7058, Rev. Codes; *State* v. *Moore*, 25 Ia. 128. And under the information it was competent for the jury to convict of the offence described in § 7177, Rev. Codes. *State* v. *Maloney*, 7 N. D. 119, 72 N. W. Rep. 927; § 8244, Rev. Codes; *State* v. *Young*, 40 Pac. Rep. 659; *Rhodes* v. *State*, 27 N. E. Rep. 866. The indictment is not bad for duplicity because in setting out the manner in which it was committed, or the means employed for its accomplishment, facts are charged which also constitute another crime under the statute. *Herron* v. *State*, 42 N. E. Rep. 541; *Thomas* v. *State*, 26 S. W. Rep. 729; *Thompson* v. *State*, 34 S. W. Rep. 639, 10 Enc. Pl. & Pr. 534; *Byrne* v. *State*, 12 Wis. 519; *Hauk* v. *State*, 46 N. E. Rep. 127; *Farrell* v. *State*, 24 Atl. Rep. 723; *State* v. *Johnson*, 30 N. J. L. 185; *Scott* v. *People*, 30 N. E. Rep. 329; *State* v. *Watson*, 1 Pac. Rep. 770; *McKinsie* v. *State*, 40 Am. St. Rep. 795; *State* v. *Burrell*, 8 Pac. Rep. 470; *Benn* v. *State*, 58 Am. Dec. 238; *People* v. *Aikin*, 11 Am. St. Rep. 512; *State* v. *Belle*, 92 Am. Dec. 661; *People* v. *Aultman*, 47 N. E. Rep. 180; *Lehman* v. *People*, 48 Am. Dec. 340.

WALLIN, J. The defendant was charged with the crime of murder in the second degree by an information filed in the District Court by the state's attorney of Ramsey county. After a plea of not guilty, the issues were tried by a jury, and the following verdict was returned into court and recorded: "We, the jury, find the defendant E. H. Belyea guilty of the crime of unlawfully procuring an abortion, as charged in the information." Upon said verdict the trial court, on July 8, 1899, entered a judgment of conviction, and thereby sentenced the defendant to serve a term of three years at hard labor in the penitentiary at Bismarck. The information upon which the defendant was tried and convicted is as follows: "P.

J. McClory, as state's attorney in and for the County of Ramsey, State of North Dakota, as informant, here in open court, in the name and on behalf and by the authority of the State of North Dakota, gives this court to understand and be informed that heretofore, to-wit: on the sixth day of January, A. D. 1899, at the County of Ramsey and State of North Dakota, one E. H. Belyea, and Albert Sampson, late of said county and state aforesaid, did commit the crime of murder, committed as follows, to-wit: That on the first day of January, A. D. 1899, at the City of Devils Lake, in said county and state, the said E. H. Belyea and Albert Sampson did then and there, unlawfully, maliciously, willfully, and of their malice aforethought, employ and use a certain instrument, to this informant unknown and not ascertainable, in and upon the person of one Julia Solberg, who was then and there a woman pregnant with child, and did then and there unlawfully, maliciously, willfully, and of their malice aforethought introduce said instrument into the womb of said Julia Solberg, with intent then and there to procure and produce the miscarriage and abortion of the said Julia Solberg; the said E. H. Belyea and Albert Sampson then and there well knowing that the use of the said instrument would produce such miscarriage and abortion, and it not being necessary to the preservation of the life of the said Julia Solberg, and, by means and in consequence of the use and employment of the said instrument by the said E. H. Belyea and Albert Sampson in and upon the person of the said Julia. Solberg, she, the said Julia Solberg, then and there being wounded of her body, from then and until the 6th day of January, A. D. 1899, in the county and state aforesaid, did languish, and at the same time and place she, the said Julia Solberg, of the mortal wound aforesaid died, and the said E. H. Belyea and Albert Sampson, in the manner and by the means aforesaid, her, the said Julia Solberg, did unlawfully, maliciously, feloniously, willfully, and of their malice aforethought kill and murder, and in this did commit the crime of murder in the second degree; this contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of North Dakota. Dated at Devils Lake, Ramsey county, North Dakota, May 4, A. D. 1899." To this information defendant demurred, assigning several of the statutory grounds of demurrer, including the ground of duplicity, and the ground that the facts stated do not constitute a public offense. The demurrer was overruled. After the verdict was returned, and prior to the sentence, a motion for a new trial and a motion in arrest of judgment were interposed in defendant's behalf. Both motions were denied by the trial court.

The record in the case, as transmitted to this court, is voluminous, and embraces a statement of the case, including the evidence and numerous exceptions, and counsel for the appellant in their brief filed in this court have made numerous assignments of error based upon exceptions found in the record. But in disposing of the case this court has not found it necessary to rule upon any of the excep-

tions or assignments of error save those which relate to the verdict, and to certain instructions given to the jury by the trial court relating to the verdict. The record embraces the following recital: "That after twenty-four hours' deliberation the jury returned into court and announced the following verdict: 'We, the jury in the above-entitled action, find the defendant E. H. Belyea guilty of unlawfully producing an abortion. C. B. Kendall, Foreman.' That the court refused to accept said verdict, or to record the same, but instructed the jury orally that he had prepared another form of verdict, which was submitted to them, and requested them to retire and consider their verdict further. That thereafter, and on the same day, to-wit: June 24th, the defendant and his counsel being present in court, and also counsel for the state, the court directed the bailiffs in charge of the jury to bring them into court. The jury being brought into court, and the roll of jurors called by the clerk, the court inquired of the jury, 'Have you agreed upon a verdict?' To which C. B. Kendall, a member of the jury, replied, 'We have not, your honor.' Thereupon the court instructed the jury that the substituted form of verdict which he had handed them did not amount, if agreed upon, to a conviction of the defendant of any degree of homicide, but that the same amounted to an acquittal of the charge of murder and manslaughter, and requested the jury to retire for further deliberation. The defendant, by his counsel, then and there excepted to the remarks of the judge on the ground and for the reason that the jury had not asked for further instructions, and that they had been called into court by the court and without any request upon their part, which exception was allowed. That thereafter, and within the space of five minutes, the jury returned into court, and the roll of the jury having been first called, and all the jurors reporting present, by their foreman they report the following verdict: 'We, the jury, find the defendant E. H. Belyea guilty of the crime of unlawfully procuring an abortion, as charged in the information. C. B. Kendall, Foreman,'—which verdict was received and recorded, the jury polled, and, each member of the jury answering that the verdict as read was his verdict, the jury were discharged."

Exception is taken to the charge of the trial court as embodied in the following instruction given to the jury: "The crime of procuring an abortion as a lesser crime than the crime of murder in the second degree, and is necessarily included in the charge of murder in the second degree contained in the information; so that the information charges the crime of procuring an abortion by means of instruments." This instruction, in effect, was repeated elsewhere in the charge. But, before taking up either of the instructions to the jury or the verdict, it will be necessary to refer briefly to the nature of the accusation against the defendant.

The information, in terms, names the offense which is embodied in it as murder, and in its concluding sentence the offense is designated as murder in the second degree. The information is obviously

and avowedly framed with reference to subdivision 3, § 7058, Rev. Codes, which declares that homicide is murder "when perpetrated without any design to effect death by a person engaged in the commission of any felony." No claim is made that the offense of murder in the first degree is charged, and the respondent's counsel in their brief expressly disclaims any intention of setting out the offense of abortion as defined by section 7086, Id. Neither the allegations of the information nor the evidence offered at the trial would warrant a conviction under the section last cited, inasmuch as the condition of pregnancy with a quick child is neither alleged nor shown to exist in this case. The theory of the prosecution is that the death of Julia Solberg was brought about by the defendants' agency, while defendants were engaged in the commission of a felony which is defined by section 7177, Id. The crime defined by that section does not include an attack upon the life of a quick child, nor is it necessary to complete such offense that death either to a pregnant woman or to her child should transpire. Nor is it essential to the crime that any miscarriage should be produced. Under section 7177, Id., if drugs are prescribed or administered to a pregnant woman, or if such woman is advised to take any drug or substance, or if instruments are used upon such woman, "with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life," the offense defined would be established.

The information is open to criticism on account of its improper and confusing use of the words "miscarriage" and "abortion." These terms are not interchangeable terms, within the meaning of the Criminal Code of this state. Section 7177 does not contain the term "abortion," nor do the acts referred to in that section refer to any attempt to procure an abortion. "Miscarriage" is the word employed in section 7177, and that term denotes, and must denote, when construed with reference to section 7086, bringing forth the foetus before it is capable of living. This meaning is also strictly accurate in a scientific sense. See And. Law. Dict. p. 6.

The information is faulty, and, under some authorities, would be held demurrable, by reason of the omission to state that the homicide was committed "without any design to effect death;" nor does the charge include a statement, in terms, that the homicide occurred while the defendants were engaged in the commission of any felony. These omissions are serious faults in an information charging a felonious homicide. Upon this point, see State v. Emerich, 87 Mo. 110.

The charge is further vulnerable to criticism on account of the repeated use of words and phrases which are specifically appropriate to an accusation of murder in the first degree, and hence are such expressions as are confusing and misleading when employed in stating another offense. Reference is here made to the repeated employment of the phrase "maliciously, willfully, and of their malice aforethought." These words import and correctly describe a deliberate

homicide; in other words, they constitute the best possible description of motive in the crime of murder in the first degree. Nor are such words either necessary or proper in describing the crime defined by section 7177, supra. To that offense "malice aforethought" is not essential. On the contrary, that statutory crime may be fully consummated without any criminal purpose, and by one animated only by kindly motives. The offense is committed if the designated means are used upon a pregnant woman with the intent to procure the miscarriage of such woman when such miscarriage is not in fact necessary to save the life of the woman. The law leaves it for a jury to determine whether or not any miscarriage was necessary to save the life of the pregnant woman, and, if in the judgment of 12 men a miscarriage of the woman was not necessary to save her life, a verdict of guilty may be returned regardless of the motives governing the accused. It is therefore entirely clear that words which are adapted only to a description of murder in the first degree are wholly out of place and confusing when used to describe the minor offense defined in section 7177.

Again, it is essential, in charging the offense defined in the section last cited, to state that a miscarriage was not necessary to save the life of the woman who was operated upon. See *Bassett* v. *State*, 41 Ind. 303; *Willey* v. *State*, 46 Ind. 363; *State* v. *McIntyre*, 19 Minn. 93 (Gil. 65). This averment should be made in terms which are direct and certain, nor should it be set out parenthetically or in ambiguous terms. A scrutiny of this information discloses that this material averment, if made, is set out in ambiguous terms, and in a parenthetical clause of the information. From the language employed it will be found difficult to say whether the use of the instrument was unnecessary or whether the miscarriage was unnecessary. All such parenthetical and ambiguous language is in violation of a settled rule of criminal pleading which demands that all essential averments should be set out in language which is both direct and certain. But in the case at bar we have no occasion to rule upon any doubtful question, and hence we shall for the purposes of the case assume, without deciding the point, that the information sufficiently charges the crime of murder in the second degree.

It is our opinion that the trial court did not err in overruling the demurrer to the information based upon the ground of duplicity. It is true that the facts stated in the information, when liberally construed, amount to a description of two offenses, viz: the offense of murder in the second degree, and the minor offense defined in section 7177. But in this information there is manifested an obvious purpose to charge the crime of murder in the second degree, and that crime was named in terms as the crime actually committed by the defendants. In setting out this crime, it was essential to set out such facts as were necessary to show that the homicide was unintentional, and that it resulted as an incident while defendants were engaged in the commission of a felony which was collateral to the homicide, and

which felony was not either of the aggravated felonies which under section 7065 are associated with the crime of murder in the first degree. To bring the acts done by the defendants within the provisions of the statutes which define murder in the second degree, committed while the defendants were engaged in the commission of a felony, it became necessary to set out the facts and circumstances constituting the felony in the commission of which the defendants were engaged when the unintentional homicide occurred. For this purpose, and this alone, the information, we think, necessarily embodied a statement of the facts constituting the subordinate felony. If we are correct in this view, it will follow that all the averments embraced in the information which relate to the subordinate felony are strictly referable to the major offense, and are averments essentially descriptive of the major offense. We have no doubt that this is the proper view, and hence we conclude that the information does not contain a statement of more than one offense, within the meaning of the statute which forbids a charge of two offenses in the same indictment or information. See *Carpenter* v. *People,* 64 N. Y. 483.

The offense of murder in the second degree is named as the offense charged against the defendants, and no other crime or offense is named. If the prosecution in framing this information contemplated a conviction for the minor felony, which is an independent offense separate from, and not generically connected with, any homicide, it would, at least, have been necessary to name the minor offense, and give the defendants an opportunity to plead to the same. True, such a design would be in the teeth of the statute, which forbids a charge of more than one offense in the same indictment. See upon this point the learned opinion of Ex-Chief Justice Corliss in *State* v. *Smith,* 2 N. D. 515, 52 N. W. Rep. 320. But, if this statutory obstacle could by any possibility be overcome, it would still be necessary to describe the minor felony in language which would be both direct and certain as to the offense charged and as to the facts constituting the offense. As to this necessity, see the following authorities: *Brooks* v. *Com:* (Ky.) 32 S. W. Rep. 403; *People* v. *Maxon,* 57 Hun. 367, 10 N. Y. Supp. 593; *People* v. *Dumar,* 106 N. Y. 502, 13 N. E. Rep. 325. It is superfluous to say that this information with regard to the minor felony, considered as an independent crime, is not direct and certain with reference either to the offense charged or to facts constituting such offense. The offense defined in section 7177 is not named, and the facts constituting such offense, as stated in the information, are blended with other averments of fact which are used and intended to be used in stating another offense, *i. e.* the offense of murder in the second degree. Such statements of fact are therefore quite the reverse of definite and certain, when scrutinized with reference to a claim that the same are made for the purpose of charging these defendants with an independent felony.

Reverting, now, to the instructions given to the jury, and to the

verdict, which manifestly was returned in response to specific instructions, it will be necessary to construe certain sections of the Code of Criminal Procedure. Section 8242, Rev. Codes 1895, declares: "Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty." Section 8244 is as follows: "The jury may find the defendant guilty of any offense the commission of which is necessarily included in that with which he is charged in the information or indictment, or of an attempt to commit the offense." The provisions of section 8242 can have no application to the case at bar, and there is no claim made that said section can apply to this case. As has been seen, the crime charged is murder in the second degree, which crime is not susceptible of division into degrees, and is not so distinguished by any provision of the Code. Hence the verdict could not have been returned with any reference to said section of the Code. If the verdict can be sustained (inasmuch as its legal effect is to exonerate the accused of the charge actually made in the information), recourse must be had to the provisions of section 8244. Tested by that section, we are clear that the verdict is illegal and voidable. The verdict assumes to find the defendant Belyea guilty of a felony, the commission of which, in our opinion, is not necessarily included in the crime of murder in the second degree, with which.he was charged. The crime of procuring an abortion, as defined in section 7177, supra, whether committed as charged in the information or otherwise, is an offense not generically associated with the crime of murder in the second degree. That crime, as we have shown, is one which does not include an attack upon human life, nor does it include any attempt to destroy the life of any living foetus. It is true that the charge in the information necessitated the proof and allegation of the fact that the homicide in question was committed by the defendant's agency while engaged in the commission of the offense defined in section 7177, which offense is one which in its perpetration involves a serious hazard to human life. But this circumstance is adventitious. The crime charged can be committed if an accidental death results by defendant's agency while he is engaged in the commission of any felony whatsoever, except those committed in connection with the crime of murder in the first degree. This court has had occasion to put a construction upon the provisions of section 8244 of the Revised Codes of 1895 in two cases. See *State* v. *Marcks*, 3 N. D. 533, 58 N. W. Rep. 25, and *State* v. *Johnson*, 3 N. D. 150, 54 N. W. Rep. 547. These are not homicide cases, and hence not strictly in point. Nevertheless, they may be cited as illustrations of the rule governing in the exclusion and inclusion of offenses under the provisions of the section we are discussing. The crucial test is well stated in *Cameron* v. *State*, 13 Ark. 712. The court in that case say "that upon an indictment for a felony the accused may be convicted of a misdemeanor where both offenses belong to the same

general class, where the commission of the higher may include the commission of the lower offense, and where the indictment of the higher offense contains all the substantive allegations necessary to let in proof of the misdemeanor." See, also, *Guest* v. *State,* 19 Ark. 406. This rule of inclusion and exclusion is stated and applied with admirable discrimination in the case of *State* v. *Shock,* 68 Mo. 552. See, also, *State* v. *Sloan,* 47 Mo. 604; *Dedieu* v. *People,* 22 N. Y. 178; *People* v. *Rector,* 19 Wend. 569. Our conclusion, based upon the rule of law embodied in these authorities, is that the verdict returned in this case was not responsive to the charge against the accused, and that the trial court erred in instructing the jury to the effect that the verdict actually returned would be proper under the information. The judgment of the District Court is reversed, and a new trial ordered. All the judges concurring.