THE STATE v. JOHNSON.

1. **Murder:** EVIDENCE: DYING DECLARATIONS: FOUNDATION. On a trial for murder, the wife of the decedent was permitted to testify to declarations made by him prior to his death. As a foundation for this testimony, she testified that he knew, when he made the declarations, that he was going to die, and the evidence showed that she had an opportunity to know the condition of his mind. *Held* that this was a sufficient foundation for the dying declarations, without showing further *how* she knew that he knew he was going to die. It was for the defendant to inquire into that point on cross-examination, if he had doubts in relation thereto.

2. **Evidence:** EXCLUSION: NO PREJUDICE. Where defendant had testified positively to a fact, and his statements in regard thereto were not questioned, *held* that he was not prejudiced by the exclusion of other evidence offered to corroborate his statements.

3. ———: ———: MATERIALITY NOT APPARENT. Where an objection to a question was sustained, and it is not apparent, and was not shown, what fact was expected to be elicited by the answer, error will not be presumed.

4. **Criminal Practice:** CROSS-EXAMINATION OF DEFENDANT. The permitting of a second cross-examination of the defendant rests in the sound discretion of the court, which will be presumed to have been rightly exercised until the contrary is shown.

5. ———: ———: CONTRADICTION BY STATE. Where the defendant has given testimony, on a second cross-examination, to his own benefit, the state may properly contradict him by other witnesses.

6. **Murder:** EVIDENCE: DYING DECLARATIONS: INDISTINCT PRONUNCIATION OF DEFENDANT'S NAME: QUESTION FOR JURY. Where the dying declarations of the decedent, made when he was feeble and unable to articulate distinctly, were given in evidence, and referred to " Johnts "

as one of the persons who had assailed him, *held* that it was a proper question for the jury to determine from all the circumstances whether he meant Johnson, the defendant.

7. **Criminal Evidence:** ADMISSIONS: WEIGHT. Declarations of a defendant tending to connect himself with the crime of which he is accused, when fully and accurately proved, constitute a very satisfactory kind of evidence.

8. ———: ALIBI: FAIR PREPONDERANCE OF EVIDENCE. There is no difference between the expressions "preponderance of evidence," and "*fair* preponderance of evidence;" ( *Bryan v. Chicago, R. I. & P. R'y Co.,* 63 Iowa, 464;) and so there was no error in instructing that, if defendant's claim of *alibi* was supported by a *fair* preponderance of the evidence, he should be acquitted.

9. **Murder:** INSTRUCTIONS READ TOGETHER. An instruction that, if defendant, either alone or with the assistance of others, inflicted the injuries which caused the death of the decedent, he is guilty, *held* not subject to the objection that it instructed the jury that if he killed him at all, lawfully or otherwise, he is guilty; for the other instructions precluded any inference of that kind.

10. ———: IN COMMISSION OF ROBBERY : INDICTMENT. A defendant may be found guilty of murder in the first degree upon the finding that he killed the decedent in the perpetration of robbery, without the allegation of that fact in the indictment.

11. ———: ———: INSTRUCTION. An instruction which, when read together, conveys the thought that, if the injuries of which decedent died were committed by the persons who robbed him, the inference is that the assault was made for the purpose of the robbery, *held* not erroneous.

12. **Criminal Practice:** NEW TRIAL: NEWLY-DISCOVERED EVIDENCE. A new trial will not be granted in a criminal case on the ground of newly-discovered evidence which is merely cumulative, or tends to impeach one or more of the state's witnesses.

*Appeal from Pottawattamie District Court.*

WEDNESDAY, OCTOBER 5.

THE defendant was indicted and convicted of murder in the first degree, and sentenced to imprisonment in the penitentiary for life. He now appeals to this court.

*D. B. Dailey* and *Walter I. Smith,* for appellant.

*A. J. Baker, Attorney-general,* for the State.

BECK, J.—I. In the morning of the 3d day of October,

1884, William McGonigle was found in an outhouse attached to a tavern in Council Bluffs in a nearly insensible condition. He was almost nude. His clothing, or parts of it, were found in the outhouse, but no money or property of any considerable value was found upon his person or his clothing. There were marks of a violent blow upon his head, which was of such character as to account for his insensible condition. The marks of another blow were discovered upon his shoulder. He lived in Woodbine, where he kept a hotel, and went to Council Bluffs the day before he was found in the outhouse. The purpose of his visit was to buy goods, and he had upon his person, to be used for that purpose, $250 or $300, no part of which was found with him. He was taken to his family at Woodbine, where he died, in four or five days, from the injury caused by the blow upon his head. After he reached home he recovered to some extent, and was able to inform his wife that he was injured by two men, giving their names. There is no doubt that his death was caused by the blow upon the head, and the conclusion is authorized that it was given in the perpetration of a robbery. The evidence tending to connect defendant with the crime mainly, if not wholly, consists in statements made by the deceased to his wife shortly before his death, and the admission made by the defendant to a woman some days after the commission of the crime. We will notice the objections made to the judgment upon the verdict in the order of their discussion by counsel.

II. The wife of the deceased was permitted to testify, against defendant's objection, to declarations made by

1. MURDER: evidence: dying declarations: foundation.

deceased, shortly prior to his death, which tend to connect defendant with the commission of the crime. It is insisted that it was not shown that these declarations were made by deceased in the belief of his certain and speedy dissolution. The abstract upon which the case is submitted to us shows that the wife testified that her husband " knew he was going to die " at the time he made

the declarations.  It is insisted that the evidence is insufficient to warrant the admission of the declarations, for the reason that the abstract fails to disclose how the wife knew that her husband believed he was about speedily to die.  She testifies that she was with him, and spoke with him on the subject of his injuries and condition.  She had an opportunity to know the condition of his mind, and, as she makes a positive statement in regard to it, we will presume, in the absence of any showing to the contrary, that she had knowledge upon which her positive statements were based. After making these statements, it was the defendant's duty, did he doubt her possession of such knowledge, to cross-examine her in relation thereto, and, if she disclosed her want of knowledge, to present her testimony upon that point in his abstract.  This he failed to do.  We cannot, therefore, hold that the evidence was rightly admitted.  The fact disclosed in the abstract as to the nature of the injury and the condition of the deceased, considered in connection with his declarations, warrants the conclusion that deceased believed at the time that he would soon die.

III.  The defendant testified in his own behalf.  He stated that when the homicide was committed he was in a 2. EVIDENCE: feeble condition, caused by a wound he had exclusion: no prejudice.   received from a pistol-shot some time before. He was asked to state if the bullet was still in his body, and to show to the jury his wound; but the court refused to permit him to respond to the questions, of which he now complains.  The proposed evidence was immaterial.  He had testified to his feeble condition.  The display of his wound, and the fact that the bullet had not been removed, were not needed to support his testimony on this point, in view of the fact that his statements were not questioned.

IV.  The judge of the superior court of Council Bluffs testified, for defendant, to the effect that he was, about the 3. ——: ——: time of the homicide, brought before the super-materiality not apparent. ior court upon a charge for an assault with an intent to do a great bodily injury.  The witness was asked

" to state what was the testimony as to the weapon." He was not permitted to answer the question. It is not shown what fact was expected to be elicited by the answer. The question does not indicate the nature of the reply. We cannot presume that the evidence would be material, and therefore cannot hold that the district court erred in sustaining the objection to the question.

V. The defendant was recalled for cross-examination, against his objection. We need not determine whether there

4. CRIMINAL practice: cross-examination of defendant. was error in this, for the reason that his cross-examination upon his recall developed no fact prejudicial in any degree to defendant. If the court erred in permitting the second cross-examination, it was without prejudice to defendant, and therefore not a ground of reversal. But the matter of permitting the second cross-examination rested in the sound discretion of the court, which is not shown to have been abused.

VI. The defendant, in his cross-examination just referred to, testified to his whereabouts at or about the time, which

5. ——: ——: contradiction by state. tended to show that he was not at the place of the homicide. Witnesses were afterwards introduced whose testimony tended to contradict his statements in this regard. Counsel for defendant insist that this contradictory evidence was erroneously admitted. The evidence given by defendant tended to his own benefit. Surely no reason can be given why the state could not contradict it. There is no rule of the law which limits the right of the state to introduce, at a proper time and in a proper manner, evidence which shall disclose the very truth as to all circumstances tending to establish defendant's guilt. It may be further remarked that the evidence of the witness just referred to tended to contradict the statements of defendant made in his evidence given prior to the cross-examination above referred to. For this reason the evidence was rightly admitted.

VII. The court below directed the jury in this language:

"If it appears to you therefrom [the circumstances of the case] that said McGonigle met with some accident which resulted in the injuries to his person which have been described by the witnesses, it will not be shown that any crime was committed, and the defendant should be acquitted." Counsel for defendant quote this instruction, adding to its language, after the word "therefrom," in the first line, the words "to be probable," and thereon base an objection to its correctness. The words added to the instruction are the only grounds of the objection urged by counsel. As the instruction does not contain the element of error relied upon, the objection demands no further attention.

VIII. The court, in the fifth instruction, directed the jury to consider the dying declarations of the deceased, as testified to by his widow, in determining the question of defendant's connection with the crime. Counsel for defendant insist that these declarations should not be considered at all for that purpose, for the reason that they in no degree connect defendant with the homicide. This position is based upon the ground that deceased, in his dying declarations, gave the names of the persons who inflicted the wounds upon him as "Sanders" and "Johnst." When the declarations were made, the deceased was feeble, and articulated only in a whisper and with difficulty. It was for the jury to determine, under the evidence, whether the names given by the deceased tended to point out defendant as one of the perpetrators of the crime. They were authorized to determine whether the name "Johnst," as deceased was understood to speak it, was an imperfect pronunciation of defendant's name, caused by the feeble condition of deceased, and his inability to articulate perfectly; or whether, indeed, it pointed towards another man. We are clear in the opinion that the evidence was properly submitted to the jury by the instructions to which counsel now object.

IX. There was evidence tending to show that defendant

*6. MURDER: evidence: dying declarations: indistinct pronunciation of defendant's name: question for jury.*

made certain declarations admitting his connection with the

7. CRIMINAL evidence: admissions: weight. crime. The court, in an instruction, gave correct directions to enable the jury to weigh the evidence given to prove these declarations. The instruction was prefaced with this remark: "Declarations of a defendant regarding his connection with any transaction, when fully and accurately proven, constitute a very satisfactory kind of evidence." This language is the ground of an objection which we think is not well taken. Any declaration or statement made by defendant showing his connection with the crime, "fully and accurately proven," would surely be very satisfactory, for no rational man would ordinarily make such statements if he were innocent.

X. The defendant claimed, and so testified, that he was at his home at the time of the homicide. The court directed

8. ——: alibi: fair preponderance of evidence. the jury that, if they found this claim supported by a "*fair* preponderance of the evidence," they should acquit. Counsel insist that the instruction is rendered erroneous by reason of the use of the qualifying word "fair." We have held that the use of this word in an instruction in precisely the same connection, qualifying the term "preponderance of evidence," is unobjectionable. *Bryan v. Chicago, R. I. & P. R'y Co.*, 63 Iowa, 464.

XI. The eighth instruction directs the jury that if defendant, either alone or with the assistance of others,

9. MURDER: instructions read together. inflicted the injuries which caused the death of McGonigle, he is guilty. The instruction is objected to for the reason "that it does not limit the defendant's guilt to a case where he may have lawfully killed McGonigle, but positively instructs the jury that, if he killed him at all, he is guilty." The instruction is to be read in connection with others given to the jury, which contain proper directions as to the facts which must be found to authorize conviction. The instruction under consideration was only intended to direct the jury that defendant is to be found guilty whether he committed the crime alone, or in

connection with others. The jury could not have been so misled by the instruction as to understand that defendant, whether he committed the act alone or with others, could have been found guilty, unless they found the facts which they were directed to find in the other instructions. We think there is no error in the instruction.

XII. The indictment is in two counts; each alleging premeditation, deliberation, and other necessary ingredients of the crime of murder in the first degree. The second count further alleged that the killing was by lying in wait. There is no allegation in either that the crime was committed in the perpetration of arson, rape, robbery, mayhem or burglary. The court directed the jury that, if they found the killing was done in the perpetration of a robbery, it was murder in the first degree. Counsel insist that, in the absence of an allegation in the indictment that the killing was done in the perpetration of robbery, the finding of such fact would not authorize a verdict for murder in the first degree. We are of a different opinion. The indictment sufficiently alleges that the killing amounted to murder in the first degree. It was not necessary to allege the facts and circumstances attending the crime. The indictment sufficiently supported proof of facts which constituted the killing murder in the first degree, and under it proof was competent to show that the crime was committed in the perpetration of robbery. This doctrine was recognized by the supreme court of Pennsylvania under a statute similar to our own. *Com. v. Flanagan*, 7 Watts & S., 415; Whart. Crim. Law, § 1115. We have been referred to no decision in conflict with this conclusion.

XIII. An instruction given to the jury is to the effect that, if it be found that McGonigle was robbed at the time he received the injuries of which he died, an inference would arise that the injuries were inflicted for the purpose of robbing him. Counsel think the instruction authorized the jury to infer that the injuries

were inflicted for the purpose of robbery, though they should not find that the assault upon the deceased, and the robbery, were committed by the same person. We think it does not bear this construction, especially when the whole instruction is considered together. The thought of the instruction seems to be that if the injuries were inflicted by the persons committing the robbery, the inference arises that the assault was made for the purpose of the robbery.

XIV. A motion for a new trial on the ground of newly-discovered evidence was, we think, rightly overruled. The 12. CRIMINAL practice: new trial: newly-discovered evidence. newly-discovered evidence was either cumulative, or tended to impeach one or more of the state's witnesses. It was not, therefore, sufficient to authorize a new trial.

XV. It is urged by counsel that the evidence does not support the verdict. We think that it is not so wanting in that regard as to require us to interfere.

The judgment of the district court is

AFFIRMED.