### PEOPLE v. EATON.

(Supreme Court, Appellate Division, First Department. December 20, 1907.)

1. CRIMINAL LAW—EVIDENCE—ACCOMPLICES—CORROBORATION.
  Under Code Cr. Proc. § 399, providing that a conviction cannot be had on the testimony of an accomplice, unless corroborated by other evidence connecting accused with the crime, where accused himself testifies that he was connected with the crime, no further corroboration is required.

2. SAME.
  On a trial for obtaining money by fraudulent representations, evidence *held* to sufficiently corroborate the testimony of an accomplice essential to a conviction under Code Cr. Proc. § 399, providing that a conviction cannot be had on the testimony of an accomplice, unless corroborated.

  [Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1128.]

3. FALSE PRETENSES—FRAUDULENT REPRESENTATIONS.
  An employé of a railroad company was required to make an independent check of the men employed by a construction company, which relied on the reports made by the employé in paying the men. The employé and

the timekeeper of the construction company reported that a third person was entitled to receive compensation for work done, and they procured the presentation to the construction company of a check therefor, which it paid. They received the proceeds. The report was false. *Held*, that the employé was guilty of larceny under Pen. Code, § 528, punishing one who, with intent to defraud, obtains from another by aid of fraudulent representations any money, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, §§ 5–12.]

4. SAME—INDICTMENT.

An indictment under Pen. Code, § 528, providing that one who, with intent to defraud the owner of his property, obtains from his possession by aid of fraudulent representations any money, shall be guilty of larceny, need not allege the means by which defendants carried out their fraudulent conspiracy to obtain the money of another, or that the latter or its employés or agents relied on the false representations.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, §§ 34, 35.]

5. SAME—OBTAINING MONEY OF CORPORATION.

A representation to an agent of a corporation to obtain money from the corporation is a representation to the corporation within Pen. Code, § 528, punishing one who, with intent to deprive the owner of his property, obtains by aid of fraudulent representations any money, etc.

Appeal from Court of General Sessions, New York County.

Codwell J. Eaton was convicted of grand larceny in the second degree, and he appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Henry Hardwicke, for appellant.
Robert C. Taylor, for the people.

INGRAHAM, J. Two questions are presented on this appeal, one relating to the sufficiency of the indictment and the other to the sufficiency of the corroboration of the evidence of Swartz, an accomplice. There are two counts in the indictment. The first alleges that the defendants on the 9th day of February, 1907, "with intent to deprive and defraud a certain corporation called Degnon Contracting Company of the proper moneys, goods, chattels, and personal property hereinafter mentioned, and of the use and benefit thereof; and to appropriate the same to their own use, did then and there feloniously, fraudulently, and falsely pretend and represent to the said corporation that one W. Jukus had been for some time prior thereto, and was then and there, a servant and employé of the said corporation, and shortly theretofore had worked for the said corporation as such servant and employé for 13 days, and that the said corporation was then and there indebted to the said W. Jukus, and there was then and there due and owing to the said corporation to him as such servant and employé for and on account of the said work the sum of $48.75," and that the said defendants did then and there feloniously and fraudulently obtain from the possession of the said corporation the said sum with intent to deprive and defraud the said corporation of the same, and of the use and benefit thereof and to appropriate the same to their own use, "whereas, in truth and in fact, the said W. Jukus had not been prior thereto,

and was not then and there, a servant or employé of the said corporation, and theretofore had not worked as such servant or employé for the said corporation for 13 days, or for any time whatsoever," and there was not due and owing the said sum of $48.75, and that the pretenses and representations so made by the defendants to the said corporation were in all respects utterly false and untrue as at the time of making the same the defendants then and there well knew, and that by the means aforesaid the said money of the said corporation the defendants feloniously did steal. The second was a general count for larceny.

It appeared that Eaton, the appellant, was employed by the New York & Long Island Railroad Company to make an independent check of the men employed in shaft 3 of a tunnel being constructed by the Degnon Company for the railroad company, who relied upon the appellant's reports in payment of the bills of the Degnon Company. The appellant made a return to the railroad company every morning, which stated the number and names of the men who were employed in shaft 3. Every morning the railroad company received a report from the Degnon Company made up by Swartz, the timekeeper of that company as to the men employed in shaft 3 the day before, and these returns from the Degnon Company were compared with the appellant's returns as to the number of men employed. It seems that each employé had a number, and the returns were made by these numbers, and to each number there was affixed a letter which indicated the nature of the employment, so that if these two reports, that from the Degnon Company and from the appellant, agreed, the men were paid for the time thus certified; that, when a man was employed by the Degnon Company, he received a brass check upon which was a number by which he was identified while he continued to work; that on the pay day he presented that check, and he then received the money due him contained in an envelope that corresponds to the number on the check that he presented. On the 9th day of February, 1907, one Abramson presented a check with the number 3,178, and was paid $48.75. The timekeeper for the Degnon Company was Swartz, and the timekeeper for the railroad company was the appellant. Abramson testified that on the 9th of February he presented check No. 3,178 to the Degnon Company at the foot of East Twenty-Second street, and received an envelope containing money; that about three weeks before that he met the appellant, who told the witness that his father had bought checks from people working in the tunnel, and he wanted the witness to go down and present one of the checks and collect the money for him; that the appellant told Abramson to walk to 112 East Forty-First street with him; that the appellant's father handed him a brass check when the witness went to the paymaster of the Degnon Company, presented the check, and received an envelope there under a different name, brought the envelope back, and handed it to the appellant's father; that the appellant then handed the witness $5, and asked him if he would come again two weeks afterwards and cash another check. Two weeks afterwards the witness went down with his cousin, where they were each given a check and told to go and collect the money on that check, which he did and turned it over to the

appellant. This was all previous to the 9th of February, 1906. The witness went through with this performance four times prior to the 9th of February, when he presented check No. 3,178, and received from the Degnon Company $48.75. Swartz was present at the same time that the witness received the checks. Swartz was then called as a witness, and testified that he was in the pay office on pay day; that somebody brought this check No. 3,178 and presented it, and that he (Swartz) checked it off as "O. K.," and told the paymaster that it was all right, and that then the paymaster paid it; that about December 1st, prior to this time, the appellant came to Swartz, and said he had a scheme by which they could make some money, that it was simply putting in checks and putting the names of men in the book with the same number as upon the checks; that Swartz should give to the appellant checks and he would have the money drawn out on pay day; that Swartz agreed to this scheme, and he selected names and numbers which he put into his report as the men who had done the work upon the job, and then gave the numbers to the appellant; that this continued for several weeks up to the pay day February 9, 1907; that No. 3,178 was one of the numbers that he put on the pay roll as representing a man who was given the name "Jukus" on the pay roll, but who had done no work, and he entered the number in his timebook and upon the slip that he furnished to the Degnon Company; and that the check representing this number was then given to the appellant, who collected the money from the Degnon Company; that he received from the appellant a portion of the money that was thus collected from the Degnon Contracting Company. There was other evidence showing the method by which this plan had been worked out and connecting the defendant with it. The people having rested, the appellant was called as a witness on his own behalf. He testified that he had a conversation with Swartz, the timekeeper of the Degnon Company, about purchasing checks; that Swartz said there was a lot of these men who wanted to sell their time, and there was an opportunity to buy them for a mere song; that he introduced the appellant to certain men who wished to sell their time, and that the appellant determined that it was all right, and that he subsequently received checks from Swartz as checks that had been purchased from men who said that they were entitled to be paid; that on that day he gave the checks to his father, or one of the boys, to be cashed; that 28 or 29 checks received from Swartz had been cashed up to the 9th of February; that Swartz never told him that these checks did not represent actual work, but had been taken out of the desk of the Degnon Company; that he had no idea that they were not perfectly bona fide checks; that he knew Abramson; that he presented Check No. 3,178 on February 9th with his knowledge and consent; that in his report turned in on February 7, 1907, check No. 3,178 appeared there; that he got check No. 3,178 with other information supplied him by Swartz; that Swartz supplied him with a list of the men at work every morning, which he would accept and report as though made in the regular course of his investigation. Thus, upon his own testimony, the appellant, who was employed by the railroad company to make an independent investigation of the men at work, took from Swartz the

names of men who did work represented by checks that Swartz furnished him, and put them on his report to his employer, and that it was in this way that the fraud was perpetrated. Certainly the defendant's own testimony directly connected him with the crime of which he was charged. The provision of the Code (section 399, Code Cr. Proc.) is satisfied, if the testimony of the accomplice is corroborated by such other evidence as tends to connect the defendant with the commission of the crime. When the defendant himself testified that he was connected with the crime, no further corroboration is required. There was much other evidence that directly connected appellant with this crime. A witness named Leow, who was called by the defendant, testified that on the morning of the 9th of February the appellant advised him not to cash the checks; that it would not be wise for him to cash any, as he might be caught; and that Swartz told him that they were padding the pay rolls with extra checks. The evidence is undisputed that these pay rolls were made up from returns of Swartz; that they were sent to the railroad company, who checked them off by the time slips furnished by the appellant, and that no man received pay, unless he were on both of the time slips furnished by the two men; that these slips were relied upon by the paymaster of the Degnon Company when the money was paid, and the person to whom the money was paid was determined by the presentation of the brass checks with the number upon it.

The other question presented is as to the sufficiency of the indictment. The false representation was that one Jukus had been employed by the Degnon Company, and that the Degnon Company was indebted to Jukus in the amount that was received. The defendant, in his testimony, admits that he presented the check calling for a payment to Jukus of $48.75; that he received the money; that the check upon which the money was paid was given to him by Swartz, and the evidence is conclusive that the paymaster of the Degnon Company relied upon the report of the time sheets made by Swartz and the appellant that this man represented by that check was entitled to receive from the Degnon Company $48.75, and upon the possession of the check by the man applying for payment. All of the elements of the crime were thus established.

The allegation of the indictment that the representations were made to the corporation, and not to a particularly named agent of the corporation, is clearly sufficient. The indictment is under section 528 of the Penal Code, which provides that:

"A person who, with the intent to deprive or defraud the true owner of his property, * * * takes from the possession of the true owner, or of any other person; or obtains from such possession by color or aid of fraudulent or false representations or pretense, or of any false token or writing * * * any money, personal property, things in action, evidence of debt or contract, or articles of value of any kind * * * steals such property, and is guilty of larceny."

Now, the evidence is undisputed that this $48.75 was the money of the Degnon Company, and that the appellant, with others, by color or aid of fraudulent or false representations, or pretense, obtained that money from the possession of the Degnon Company. It was not

necessary ·to allege in the indictment the means by which the parties ·
carried out their fraudulent conspiracy to obtain the money from the
Degnon Company, or that the Degnon Company, or its employés or
agents, relied upon the false representations. Every element of ·a
false and fraudulent representation or pretense under which the Deg-
non Company's money was obtained is alleged and proved. The point
that the appellant could not have made a false representation to a cor-
poration, because it is an artificial person, is without the slightest
merit. All corporations have to act through agents, and a representa-
tion to an agent of a corporation to obtain money from the corpora-
tion is a representation to the corporation.

It is quite clear that this crime was proved by undisputed evidence;
the only possible question being whether or not the defendant acted
with intent to deprive or defraud the true owner of his property, and
there was certainly evidence that justified the verdict of the jury.

The judgment should be affirmed. All concur.

