STATE, Respondent, *v.* BOLTON, Appellant.

(No. 5,142.)

(Submitted October 21, 1922. Decided November 13, 1922.)

[212 Pac. 504.]

*Criminal Law—Homicide—Information—Sufficiency—Instructions—Accomplices—Corroboration—Nature and Sufficiency of Evidence.*

Homicide Committed in Perpetration of Felony—Information—Sufficiency.
1. Where two defendants, tried separately, had entered into a conspiracy to commit robbery by taking incriminating evidence from the possession of an officer in the perpetration of which the latter was killed by one of them, the information against the other charging a premeditated killing need not set forth the facts constituting the crime of robbery or allege that in the attempt to commit the latter crime the homicide was committed.

Same.
2. Under section 10955, Revised Codes of 1921, making all murder committed in the perpetration of or attempt to perpetrate any of the crimes therein mentioned murder in the first degree, an information charging that the killing was willful, deliberate, premeditated and with malice aforethought is sufficient to admit of proof that the killing was committed in the perpetration or attempt to perpetrate any one of such felonies.

Same—Trial—Instructions—Absence of Objection at Settlement—Appeal.
3. Where a defect in an instruction given was not pointed out specifically by defendant at the settlement of the instructions, the supreme court on appeal may not, under section 11969, Revised Codes of 1921, consider an objection not so pointed out.

Same—Instruction Offered by Appellant—Appeal.
4. Of an instruction given at the request of defendant he cannot complain on the ground that it did not correctly state the law.

Same—Instructions on Murder of Second Degree and Manslaughter not Required.
5. Where a homicide is committed in the perpetration of or attempt to perpetrate any of the crimes mentioned in section 10955, Revised Codes of 1921, it is murder in the first degree, and the court need not in its instructions define murder of the second degree or manslaughter.

Same—Evidence of Accomplice—Sufficiency.
6. Evidence independent of that of his accomplice, examined and *held* sufficient in its tendency to connect defendant with a robbery in the perpetration of which an officer was killed by the accomplice.

Same—Accomplice—Nature of Corroborating Evidence—Sufficiency.
7. In determining whether there is independent evidence which tends to connect defendant with the commission of the offense charged, all of the evidence other than that given by his accomplice must be considered, including that of the defendant himself.

Same.

8. Evidence corroborative of that of an accomplice need not be direct, but if the circumstances *tend* to connect defendant with the commission of the crime it is sufficient to sustain conviction.

Same.

9. Where defendant and his accomplice had entered into a conspiracy to take personal property from the possession of an officer which they deemed incriminatory evidence against them in a probable prosecution for burglary, the jury in determining the sufficiency of the evidence independent of that of the accomplice could properly consider that defendant was in the company of the accomplice when and at the place where the latter said the conspiracy was formed, as well as that there was an impelling motive in defendant to have the property taken from the officer.

Same.

10. To render evidence corroborative of that given by an accomplice sufficient to warrant conviction, the accomplice need not be corroborated upon every fact to which he testified, or that the independent evidence alone should be sufficient to bring about that result, or that it connects defendant with the commission of the offense, it being sufficient if, unaided by that of the accomplice, it *tends* to connect with its perpetration.

Same—One Accomplice cannot Corroborate Another.

11. One accomplice cannot supply the independent evidence necessary to corroborate another accomplice. ·

Same—Accomplice—Instructions.

12. · Under an instruction merely telling the jury that if they found certain facts to exist it was for them to determine whether a person present at the time of the homicide (who according to the testimony of an accomplice had been told by defendant that a hold-up would shortly take place and who thereafter failed to warn the officer subsequently held up and killed), was an accomplice, without setting forth in that instruction a definition of the term "accomplice" or what facts developed in the evidence would constitute a witness an accomplice, the contention that the witness under that instruction was an accomplice and that therefore the jury could not consider his evidence as corroborative of that of an accomplice, *held* without merit, the effect of that instruction and one defining an accomplice having been no more than to leave it for the jury to determine whether the witness was an accomplice.

*Appeals from District Court, Treasure County; George A. Horkan, Judge.*

GLENNA MARTIN BOLTON was convicted of murder in the first degree and appeals from the judgment and an order denying him a new trial. Affirmed.

*Mr. Felkner F. Haynes,* for Appellant, and *Mr. Sharpless Walker,* of Counsel, submitted a brief; *Mr. Walker* argued the cause orally.

The information contained no sufficient statement of the facts constituting the offense, as required by the Constitu-

tion and statutes. It is true that this court has heretofore held that an indictment or information somewhat similar to the information in this case is sufficient where the defendant committed homicide in the perpetration of one of the designated felonies. (*Territory* v. *Stears,* 2 Mont. 324; *Territory* v. *McAndrews,* 3 Mont. 158.) These cases are in line with the holdings in older cases, such as *Commonwealth* v. *Flanagan,* 7 Watts & S. (Pa.) 415. But in Pennsylvania, there is a special statute which says: "It shall be sufficient in any indictment for murder to charge that the defendant did feloniously, willfully and of his malice aforethought, kill and murder the deceased." (Purdon's Dig. 1700–1861, p. 253, sec. 20.) However, the following cases, holding to the contrary, we contend state the correct rule and are based on more logical reasoning: *Rayburn* v. *State,* 69 Ark. 177, 63 S. W. 356; *State* v. *Belyea,* 9 N. D. 353, 83 N. W. 1; *State* v. *Brown,* 21 La. Ann. 347.

The law is well settled that the mere presence of an accused, when an offense is committed, will not make him guilty, since there must be some character of guilty connivance or participation. (*Davis* v. *State,* 85 Tex. Cr. 15, 209 S. W. 749; *Levering* v. *Commonwealth,* 132 Ky. 666, 136 Am. St. Rep. 192, 19 Ann. Cas. 140, 117 S. W. 253.) Proof of suspicious circumstances and of opportunity to commit a crime, and of association of defendant with the perpetrator of the crime, is insufficient corroboration to justify a conviction upon the testimony of an accomplice. (*State* v. *Spotted Hawk,* 22 Mont. 33, 55 Pac. 1026; *People* v. *Morton,* 139 Cal. 719, 73 Pac. 609; *People* v. *Thompson,* 50 Cal. 480: *State* v. *Willis,* 9 Iowa, 582; *Smith* v. *State* (Tex.), 38 S. W. 200.) The corroboration of an accomplice is not sufficient if it merely connects the defendant with the accomplice in the crime. It is necessary that independent testimony, as to material matters, tend to connect the accused with the commission of the crime itself, and not merely with the perpetrators thereof; and the corroborating evi-

dence should be sufficient to tend to connect the defendant with the commission of the crime, if the evidence of the accomplice were entirely eliminated from the case, and not considered. (*State* v. *Lawson,* 44 Mont. 488–490, 120 Pac. 808; *People* v. *Robbins,* 171 Cal. 466, 154 Pac. 317, 319; *State* v. *Altwatter,* 29 Idaho, 107, 157 Pac. 256, 257; *State* v. *Bridwell,* 48 Utah, 97, 158 Pac. 710; *State* v. *Wilks* (Okl. Cr.), 187 Pac. 813; *State* v. *Duncan,* 158 Iowa, 652, 138 N. W. 913; 1 R. C. L. 169, 170.)

The authorities are uniform that knowledge that a crime was about to be committed, presence at the time of the perpetration of the crime, and failure to warn the victim in the absence of a legal duty to act, are not sufficient proof of complicity in the commission of a crime. In addition to presence and knowledge and acquiescence in the commission of an offense, the law requires the doing of some act in the way of encouraging, advising, aiding or abetting, which is an ingredient of or immediately connected with or leading to the commission of the offense. An accomplice is one who, with criminal intent, acts with the principal offender, and participates in the commission of the crime. (*State* v. *District Court,* 37 Mont. 191, 15 Ann. Cas. 743, 95 Pac. 593; *Hicks* v. *United States,* 150 U. S. 442, 37 L. Ed. 1137, 14 Sup. Ct. Rep. 144 [see, also, Rose's U. S. Notes]; *Carrico* v. *State,* 16 Okl. Cr. 118, 180 Pac. 870; *State* v. *Bosworth,* 170 Iowa, 329, 152 N. W. 581; *State* v. *Dalton,* 65 Wash. 663, 118 Pac. 829; *Bradley* v. *State,* 2 Ga. App. 622, 58 S. E. 1064; *Elmendorf* v. *Commonwealth,* 171 Ky. 410, 188 S. W. 483; *State* v. *Orrick,* 106 Mo. 111, 17 S. W. 176, 329; *McCoy* v. *State,* 91 Miss. 257, 44 South. 814; Underhill on Evidence, 2d ed., 69; 1 R. C. L. 158.)

Under instruction No. 21, the state's witness Sam Pope was an accomplice of Reagin, and it is elementary that the testimony of one accomplice cannot be accepted as sufficient corroboration of the testimony of another; and hence there could be no conviction from the testimony of accomplices

alone, no matter how many there may be; yet it was largely upon the testimony of Sam Pope that the state relied. (*State* v. *Spotted Hawk,* 22 Mont. 33, 55 Pac. 1026; *People* v. *Bunkers,* 2 Cal. App. 197, 84 Pac. 364, 370; *People* v. *Compton,* 123 Cal. 403, 56 Pac. 44; *Cudjoe* v. *State,* 12 Okl. Cr. 246, 154 Pac. 500; *State* v. *Brownlee,* 84 Iowa, 473, 51 N. W. 25; 16 C. J. 710.)

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for the State, submitted a brief; *Mr. Foot* and *Mr. E. D. Gerye,* County Attorney of Treasure County, argued the cause orally.

The theory of the state in this case was that the homicide occurred while appellant and his accomplice, Reagin, were attempting to take certain personal property from the possession of the deceased by force and fear, and that by reason thereof the said homicide became and was murder in the first degree. The general rule laid down in 21 Cyc. 840 is as follows: "Under statutes providing that murder in the perpetration or attempt to perpetrate certain specific felonies shall constitute murder in the first degree, it is not necessary that an indictment drawn in the ordinary form for the first degree contain a specific averment that the offense was committed in connection with one of such felonies to permit proof and conviction thereof." (*State* v. *Johnson,* 72 Iowa, 393, 34 N. W. 177; *State* v. *Foster,* 136 Mo. 653, 38 S. W. 721; *People* v. *Giblin,* 115 N. Y. 196, 4 L. R. A. 757, 21 N. E. 1062; *People* v. *Conroy,* 97 N. Y. 62; *People* v. *Willett,* 102 N. Y. 251, 254, 6 N. E. 301; *Territory* v. *Stears,* 2 Mont. 324; *Territory* v. *McAndrews,* 3 Mont. 158; *State* v. *Nielson,* 38 Mont. 451, 454, 100 Pac. 229, and cases cited therein.) All that was necessary in the way of proof here was that appellant and Reagin conspired together to hold up the deceased, and, by means of force or fear, take from him the stolen property he was guarding; that they attempted to carry out this plan and that in such attempt the deceased was shot and killed. Proof of these facts proved the

offense charged in the information and there is no variance between the information and the evidence.

"An unintended homicide, committed by one who at the time is engaged in the commission of some other felony, is murder both at common law and under the statute. The rule applies, for example, to an unintended homicide committed by one who is at the time engaged in committing an unlawful abortion, where this is made a felony by statute. It also applies to one who unintentionally commits a homicide in committing arson, burglary, rape or robbery, or who while attempting to commit suicide unintentionally kills another." (21 Cyc. 716; *People* v. *Bostic,* 167 Cal. 754, 141 Pac. 380; *State* v. *Murray,* 126 Mo. 526, 29 S. W. 590; *State* v. *Barrett,* 40 Minn. 77, 41 N. W. 463; *People* v. *Vasquez,* 49 Cal. 560.)

Applying the rule as laid down in the above cases to the instant case, appellant, whom the evidence conclusively shows was a co-conspirator with Reagin in this crime, was equally with Reagin either guilty of murder in the first degree or he was not guilty, and an instruction relative to manslaughter would have been entirely out of place. (21 Cyc. 1067; *State* v. *Fisher,* 54 Mont. 211, 169 Pac. 282; *State* v. *Gray,* 19 Nev. 212, 8 Pac. 456; *State* v. *Mewhinney,* 43 Utah, 135, Ann. Cas. 1916C, 537, L. R. A. 1916D, 590, 134 Pac. 632; *Ray* v. *State,* 10 Okl. Cr. 403, 136 Pac. 980; *Dewein* v. *State,* 114 Ark. 472, 170 S. W. 582; *State* v. *Calder,* 23 Mont. 504, 59 Pac. 903.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Glenna Martin Bolton was charged with having murdered Irving Keeler, was convicted of murder of the first degree and sentenced to be, hanged. He has appealed from the judgment and from an order denying him a new trial.

The case may be said to be a companion one to *State* v. *Reagin,* 64 Mont. 481, 210 Pac. 86. This defendant is the same person referred to in the *Reagin Case* as Glen Bolton.

The state does not contend that the defendant fired the shot which killed Keeler; on the contrary, it is conceded that the act of killing was done by Reagin. The state seeks to fasten responsibility upon this defendant upon the theory that he and Reagin formed a conspiracy to rob Keeler and in the execution of their design Keeler was killed by Reagin; in other words, that Keeler was murdered in the attempt to perpetrate the robbery.

1. It is contended that the information does not meet the [1, 2] requirements of sections 11843 and 11845, Revised Codes of 1921, in that it does not contain "a statement of the facts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended," and that it is not direct and certain as regards "the particular circumstances of the offense charged." The charging part of the information follows: "That the said Glenna Martin Bolton did on the 9th day of December, A. D. 1921, at and within the county of Treasure, state of Montana, and prior to the filing of this information, willfully, deliberately, unlawfully, feloniously, premeditatedly and of his premeditated malice aforethought shoot, kill and murder one Irving Keeler, a human being, then and there being, * * * ." This precise question has been before this court on numerous occasions and an elaborate discussion of it is now unnecessary. It must be accepted in this jurisdiction that the information is sufficient to charge the crime of murder and to sustain a conviction of murder of the first degree where the killing is done with malice aforethought, deliberation and premeditation. (*Territory* v. *Stears,* 2 Mont. 324; *State* v. *McGowan,* 36 Mont. 422, 93 Pac. 552; *State* v. *Hayes,* 38 Mont. 219, 99 Pac. 434; *State* v. *Crean,* 43 Mont. 47, Ann. Cas. 1912C, 424, 114 Pac. 603.)

But it is contended that where, as in this instance, the homicide is committed in the attempt to perpetrate robbery, a different rule of pleading is to be invoked, namely: that

the information must set forth the facts constituting the crime of robbery and must in effect allege that in the attempt to perpetrate the robbery the homicide was committed. Counsel for defendant cite *Rayburn* v. *State,* 69 Ark. 177, 63 S. W. 356; *State* v. *Belyea,* 9 N. D. 353, 83 N. W. 1, and *State* v. *Brown,* 21 La. Ann. 347, and conceding that they lend support to the contention made, the utmost that can be said of them is that they represent the view of a decided minority of the courts of this country. The overwhelming weight of authority supports the rule that under a statute such as our section 10955, Revised Codes of 1921, which makes all murder committed in the perpetration of or attempt to perpetrate arson, rape, robbery, burglary or mayhem, murder of the first degree, an information in the form of this one is sufficient, and under it proof is admissible to show that the killing was committed in the perpetration of or attempt to perpetrate any one of the enumerated felonies. Some of the leading authorities supporting this rule are: *State* v. *Johnson,* 72 Iowa, 393, 34 N. W. 177; *State* v. *Foster,* 136 Mo. 653, 38 S. W. 721; *Titus* v. *State,* 49 N. J. L. 36, 7 Atl. 621; *People* v. *Giblin,* 115 N. Y. 196, 4 L. R. A. 757, 21 N. E. 1062; *State* v. *Covington,* 117 N. C. 834, 23 S. E. 337; *Wilkins* v. *State,* 35 Tex. Cr. 525, 34 S. W. 627; *State* v. *King,* 24 Utah, 482, 91 Am. St. Rep. 808, 68 Pac. 418; 21 Cyc. 840; Wharton on Homicide, 3d ed., sec. 574. In the early case of *Territory* v. *Stears* this court adopted the majority rule as stated above, and we are not disposed to depart from it at this late day. The information would have been sufficient to charge Reagin, hence it is sufficient to charge this defendant. (Sec. 11863, Rev. Codes 1921.)

2. Complaint is made of instructions Nos. 15 and 21, given by the court. It is manifest that the first reference is to state's offered instruction No. 15 which was given as court's instruction No. 14. That instruction reads as follows: ''You are instructed that if you believe from all the evidence, beyond a reasonable doubt that the defendant, Glenna Martin

Bolton, was associated with Joe Reagin, for the purpose of engaging in a robbery, that in the perpetration of the robbery Irving Keeler was killed by Reagin, then you should find the defendant guilty of murder in the first degree.'' At the time the instruction was offered, counsel for defendant made the following objection: ''Object to the giving of No. 15 on the ground that it is not in proper form, and does not state the law, and that it is ambiguous. It gives the jury the idea that—it isn't clear in that it gives the jury the idea that Glenna Bolton, the defendant, was associated if he was associated with Joe Reagin, for the purpose of engaging in a robbery and in the perpetration of the robbery Irving Keeler was killed by Reagin. I think it should say in there in order to be a fair instruction, 'if you find that the defendant was engaged in a robbery upon the person of Irving Keeler, with Joe Reagin.' '' Section 11969, Revised Codes of 1921, [3] which determines the procedure upon the settlement of instructions in a criminal case, provides: ''On such settlement of the instructions the respective counsel, or the parties, shall specify and state the particular ground on which the instruction is objected or excepted to, and it shall not be sufficient in stating the ground of such objection or exception to state generally that the instruction does not state 'the law, or is against the law, but such ground of objection or exception shall specify particularly wherein the instruction is insufficient, or does not state the law, or what particular clause therein is objected to.'' The same section provides further: ''No cause shall be reversed by the supreme court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions herein specified, and such error and exception incorporated in and settled in the bill of exceptions, as herein provided.'' Counsel for defendant did not object to any other instruction offered by the state, and it will be observed that the only specific objection made to this instruction is that it assumes as a fact that defendant was associated with Reagin for the

[65 Mont. 74.]
purpose of robbery and that in the perpetration of the
robbery Keeler was killed. We do not approve the charge
in its entirety or this particular instruction, but we are for-
bidden by the statute above to consider any objections which
were not pointed out specifically at the settlement, and what-
ever other faults this instruction may have, it is not open to
the charge that it assumes as a fact a matter which was in
dispute. By its express terms the jury were left free to deter-
mine whether defendant was associated with Reagin for the
purpose of robbery and whether Keeler was killed in the
perpetration of or in the attempt to perpetrate the robbery.

The record discloses that instruction No. 21 was given at
[4] the request of the defendant, hence he cannot complain
that it does not state the rule of law correctly. (*State* v.
*Lucey,* 24 Mont. 295, 61 Pac. 994.)

3. Section 10894, Revised Codes of 1921, has no applica-
tion to the facts of this case, hence the court was not called
upon to instruct upon the subject matter covered by that
section. Neither was it necessary for the court to define
[5] murder of the second degree or manslaughter. These mat-
ters were considered and determined adversely to defendant's
contention in *State* v. *Reagin* above, and need not be discussed
further.

4. The principal contention made by defendant is that the
[6] evidence does not justify the verdict. Reagin testified
for the state and so much of his testimony as is pertinent
here is to the following effect: Prior to December 9, 1921, he
had assisted in burglarizing the home of Mrs. Gambol and
had secured bedclothing and other household articles, some
of which were taken to and used in defendant's home. On
the afternoon of December 9, 1921, he was informed that the
officers were in the neighborhood searching for the property
which had been stolen from the Gambol home, and about dark
on that day he started from the home of Amanda J. Bolton
to go to the defendant's home, some three miles distant. At
the Breazeale water gap he met defendant, who informed

him that the sheriff had left a deputy in the Bolton home
and had secured Samuel Pope to remain there also while the
sheriff went to town for a warrant for defendant and medi-
cal attention for Mrs. Bolton. At defendant's suggestion he
and Reagin returned to the home of Amanda J. Bolton and
on their way there they agreed that Reagin should "hold up"
Keeler and that they would take the (Gambol) property
from him and destroy it; that in furtherance of that plan
they secured at the Amanda J. Bolton home a large red
handkerchief and a piece of blue cloth for a mask and soon
after started together for defendant's home, passing the
home of Eva Plaisted, stopping at the home of Mrs. Law-
ton, where defendant secured some medicine, and then went
to a point near defendant's home, where it was agreed Reagin
should wait until defendant went on and informed his wife
and Pope of what was to occur so that they would not be
unduly excited; that before they parted he asked defendant
whether Keeler "was a mean-looking fellow or would be easy
to hold up," and that defendant replied that Keeler looked
easy, was an ordinary little town dude; that defendant said
to him: "Try not to have any trouble. If you do have any
trouble, I'll get you out of it"; that he waited there three-
quarters of an hour or an hour for defendant to make proper
arrangements and then rode down to defendant's home, ad-
justed the mask to his face, drew and cocked his revolver,
went into the house and into the room where defendant, Mrs.
Bolton, Pope and Keeler were, and commanded them to put
up their hands; that defendant motioned with his hand in
the direction of Keeler; that Bolton and Pope complied with
the command but Keeler apparently hesitated, and Reagin
shot and killed him, though he did not mean to pull the trigger
of the revolver; that after the shooting he took the Gambol
property outside of the house and burned it, had defendant
take Keeler's gun from the body, and with that gun, defend-
ant's gun and his own he left and was arrested the next night;
that a part of the plan was that defendant should say that

[65 Mont. 74.]
it was a short man with whiskers, riding a gray horse, who committed the deed, although Reagin is a man six feet tall. Confessedly, if the jury believed this testimony, murder was committed in the attempt to perpetrate robbery (*State* v. *Reagin*, above) and defendant's guilt was established beyond doubt; but Reagin was an accomplice, and section 11988, Revised Codes of 1921, provides: "A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof." Reduced to its simplest form, then, this contention is that the testimony of the other witnesses without the aid of Reagin's testimony does not tend to connect defendant with the commission of the crime.

If defendant was *particeps criminis* in the attempt to commit the robbery, it follows that he is guilty of the murder, equally with Reagin; so that it was only necessary for the state to produce independent evidence which tended to connect defendant with the commission of the crime—attempt to commit robbery. Does the independent evidence have that effect? If we disregard Reagin's testimony altogether, we have these facts disclosed by the other witnesses: On December, 9, 1921, the sheriff of Treasure county and Keeler, his under-sheriff, were searching for property alleged to have been stolen from the home of Mrs. Gambol. They went to defendant's home and with his consent searched it and there found property which Mrs. Gambol's son identified as his mother's property. The sheriff placed Keeler in charge of this property and notified defendant that he had done so and that he (the sheriff) was going to get a warrant for defendant's arrest. He also secured Samuel Pope to remain with Keeler in the Bolton home until he (the sheriff) could return to Hysham for a warrant for Bolton and medical at-

tention for Mrs. Bolton. Some time after the sheriff departed and about 7 o'clock in the evening this defendant left his home ostensibly to get camphor for his wife at the home of Mrs. Lawton, but instead he went to the home of his mother (Amanda J. Bolton) and there talked with Reagin about the property which Reagin had stolen from Mrs. Gambol and brought to defendant's home. Defendant told Reagin that the sheriff had been at his place and had left a man there in charge of the stolen property. Defendant was at his mother's home for only fifteen or twenty minutes and on his way to his own home stopped at Mrs. Lawton's and secured the camphor. He did not return until about 10 o'clock, although his mother lived only three or three and a half miles distant and he was on horseback riding in a gallop much of the time. About 10 o'clock Eva Plaisted saw two horsemen riding toward Bolton's home. Soon after returning, defendant asked Pope and Keeler to step out of the house for a few minutes, which they did. Later defendant told Pope that Reagin would be there in a few minutes to "hold up" Keeler and take the Gambol property and destroy it, and very shortly thereafter Reagin did appear in the Bolton home, his face, except his eyes, covered by a mask—a large red handkerchief —and, holding in his hand a revolver cocked, he commanded all present, including Keeler, to hold up their hands, but Keeler either refused or hesitated, and Reagin shot and killed him, then took the Gambol property outside and burned it, took Keeler's gun, defendant's gun and his own and disappeared. That defendant refused to stay in the house with the body but insisted on leaving his wife and Pope there while he went to the home of R. B. Coulson for help to remove his wife from the place; that he told Coulson what had occurred and that a little short man riding a gray horse had committed the deed; that defendant and Coulson passed the home of defendant's mother where defendant stopped and inquired whether Reagin was there; that on the afternoon of December 8 defendant told John Clark that the

[65 Mont. 74.]

officers had better not come around his place "and try to pull off anything"; that Clark stated: "You don't want to do anything bad or kill anybody," to which defendant replied, "I will," and exhibited a gun; that on the day following the killing defendant told the sheriff that it was a short, sawed-off man with whiskers that killed Keeler. Reagin had lived at defendant's home for three weeks or more prior to the tragedy.

The character and *quantum* of proof necessary to corrobo[7–10]  rate an accomplice and justify a conviction have been considered by practically every court of this country, and certain general rules may be deduced which have the support of the authorities generally:

(a) In determining whether there is independent evidence which tends to connect the defendant with the commission of the offense, all of the evidence other than that given by the accomplice is to be considered, including the evidence of the defendant himself. (*People* v. *Eaton,* 122 App. Div. 706, 107 N. Y. Supp. 849; affirmed, 192 N. Y. 542, 84 N. E. 1116.)

(b) The corroborating evidence need not be direct. It may be circumstantial, and if the circumstances tend to connect the accused with the commission of the crime, the conviction will be sustained. (16 C. J. 705.)

(c) It was proper in this case for the jury to consider that defendant was in the company of Reagin immediately before the conspiracy is alleged to have been formed (*People* v. *Barker,* 114 Cal. 617, 46 Pac. 601) ; that they were then near the place where it was formed, if formed at all (*Territory* v. *Kinney,* 3 N. M. 97, 2 Pac. 357), and that there was an impelling motive prompting defendant to have the property taken from Keeler (*People* v. *Becker,* 210 N. Y. 274, 104 N. E. 396; 16 C. J. 707).

(d) It is not essential that the accomplice should be corroborated upon every fact to which he testifies (*State* v. *Slothower,* 56 Mont. 230, 182 Pac. 270), or that the independent evidence should be sufficient to justify a conviction

(*State* v. *Stevenson,* 26 Mont. 332, 67 Pac. 1001), or that it connects the defendant with the commission of the offense (*State* v. *Calder,* 23 Mont. 504, 59 Pac. 903). It is sufficient if, unaided by the testimony of the accomplice, it *tends* to connect the defendant with the commission of the offense. (Sec. 11988, above.)

Viewed in the light of these rules, we think the evidence is sufficient to meet the requirements of the statute.

5. Finally, counsel contend that instruction No. 21 be-
[11, 12] came the law of the case binding upon the jury, and that within the meaning of that instruction the witness Pope was an accomplice and hence his evidence cannot be considered for the purpose of corroborating Reagin. If Pope was an accomplice within the meaning of instruction No. 21 the other contentions upon this branch of the case must be granted, for it is elementary that in a case of this character the jury are bound by the instructions, and it is equally elementary that one accomplice cannot supply the independent evidence necessary to corroborate another accomplice.

The record discloses that Pope was present at the time the homicide was committed. He had been informed by defendant that Reagin would appear in a few minutes to "hold up" Keeler and destroy the property in his control. He had the opportunity to warn Keeler but did not warn him. Counsel for defendant concede that these facts do not constitute Pope an accomplice, but they insist that they constitute him an accomplice within the meaning of instruction No. 21, though that instruction is essentially erroneous. Instruction No. 21 reads as follows: "You are instructed, as a matter of law, that in order for a person to be an accomplice in the commission of a crime it is not necessary for such person to participate in the forming of the plan for such crime, but if you find from the evidence that a person, with full knowledge of the fact that such crime was to be committed, was present at the place of the commission of the crime, and had a full opportunity to communicate his information to the person

upon whom such crime was to be committed, and if such person willfully failed to communicate such information, and by his failure and silence acquiesced and agreed to the commission of said crime, and thereby aided, abetted and encouraged in its commission, *then and in that event it becomes your duty to determine whether or not such person was, in fact, under the law as given to you by the court, an accomplice.''*

It will be observed that in this instruction the court did not define the term "accomplice" or undertake to tell the jury what facts developed in the evidence in this case would constitute any witness an accomplice. It merely told the jury that if they found certain facts, then they could determine whether or not the person, as to whom such facts were found, was "under the law as given to you by the court, an accomplice." The only attempt to define the term "accomplice" is found in instruction No. 22, as follows: "The court instructs the jury that every person who is present at the commission of a crime with full knowledge that said crime is going to be committed and aiding and abetting, assisting or encouraging the commission thereof by words, gestures or looks is in law deemed to be an aider and abettor and is therefore a principal to the commission thereof and an accomplice therein. An aider or abettor is one who so far participates in the commission of a crime as to be present with the knowledge that the crime is going to be committed and for the purpose of aiding therein if necessary."

It cannot be said, as a matter of law, that Pope was an accomplice even within the meaning of that term as defined by these instructions. At most, his status was left for the jury to determine as a question of fact guided by the definition contained in instruction No. 22.

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES FARR, COOPER and GALEN concur.

Rehearing denied December 18, 1922.